## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HERITAGE FOUNDATION<br>214 Massachusetts Ave. N.E.<br>Washington, D.C.  20002<br><br>MIKE HOWELL<br>214 Massachusetts Ave. N.E.<br>Washington, D.C.  20002<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20408<br><br>*Defendant*. | Case No. |

## <u>COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiffs THE HERITAGE FOUNDATION and MIKE HOWELL (collectively

"Plaintiffs") for their complaint against Defendant U.S. DEPARTMENT OF JUSTICE ("DOJ

or "Department") allege on knowledge as to Plaintiffs, and on information and belief as to all

other matters, as follows:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

to compel production of records from the U.S. Attorney's Office for the District of Delaware

("USADE") that U.S. Attorney David Weiss ("Weiss") relied upon in making statements to

Congress regarding his authority over the ongoing investigation into Robert Hunter Biden.

2.      Plaintiffs' August 15, 2023 FOIA Request ("Request" or "Plaintiffs' FOIA

Request") seeks those records.  FOIA Request (Aug. 15, 2023) (Ex. 1).

3.       Weiss has been leading the investigation into the son of the President of the

United States, Hunter Biden, for over five years.  Attorney General Merrick Garland appointed Weiss Special Counsel for the investigation on August 11, 2023.  Att'y Gen. Order No. 5730-2023, Appointment of David C. Weiss as Special Counsel ("Appointment Order") (Ex. 2). Congressional Committees investigating Hunter Biden have repeatedly sought information from the Department as to the scope of Weiss's authority over the investigation.  Weiss's responses to Congress are subject to the strictures of 18 U.S.C. § 1001(c)(2) (false statements to Congressional investigators) and 18 U.S.C. § 1505 (obstruction of a Congressional investigation). Weiss's three publicly available letters to Congress on this matter are irreconcilable.  Weiss lied to and obstructed Congress.  Understanding how Weiss came to engage in extreme misconduct in his interactions with Congress is vital for the public to understand the extent to which the Hunter Biden investigation has been tainted by political interference.  Why did Weiss lie to and obstruct Congress?  Informing the American public on these matters is of the utmost importance.  Rather than provide transparency on these critical matters, Department Components have denied the Request in the face of contrary precedent they did not even address in their denials.  Plaintiffs have appealed the Department's denials.  Rather than correct its Components' obvious failures, the Department violated FOIA *again* by failing to act on Plaintiffs' appeals within the statutory time period.  Plaintiffs can wait no longer.  The urgency of the Request compels bringing this action.

## **PARTIES**

4.      Plaintiff The Heritage Foundation is a Washington, D.C.-based nonpartisan public policy organization with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense."

Heritage Foundation, About Heritage, *found at* https://www.heritage.org/about-heritage/mission (last visited Jan. 9, 2024).  Heritage is a not-for-profit IRC Section 501(c)(3) organization which engages in substantial dissemination of information to the public.  Heritage operates a national news outlet, *The Daily Signal*.

5.      Plaintiff Mike Howell leads The Heritage Foundation's Oversight Project and is an author for *The Daily Signal*.  The Oversight Project is an initiative aimed at obtaining information via FOIA requests and other means in order to best inform the public and Congress for the purposes of Congressional oversight.  "The requests and analyses of information are informed by Heritage's deep policy expertise.  By its nature, the Oversight Project is primarily engaged in disseminating information to the public."  Oversight Project, *found at* https://www.heritage.org/oversight (last visited Jan. 9, 2024); X, *found at* @OversightPR (last visited Jan. 9, 2024).  Staff for the Oversight Project routinely appear on television, radio, print, and other forms of media to provide expert commentary on salient issues in the national debate.

6.      Defendant DOJ is a federal agency of the United States within the meaning of 5 U.S.C. § 552(f)(1), whose mission is to "uphold the rule of law, to keep our country safe, and to protect civil rights."  About DOJ; Our Mission, *found at* https://www.justice.gov/about#:~:text=The%20mission%20of%20the%20Department,and%20to %20protect%20civil%20rights (last visited Jan. 9, 2024).

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to both 5 U.S.C. § 552(a)(4)(B), because records are located in the District of Delaware, and 28 U.S.C. § 1331, because the resolution of disputes under FOIA presents a federal question.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial

part of the events or omissions giving rise to the claim occurred in the District of Delaware and

under 5 U.S.C. § 552(a)(4)(B) because records the sought are located in the District of Delaware.

## **BACKGROUND**

9.     On May 25, 2023, Congressman Jim Jordan, Chairman of the House Judiciary

Committee sent Attorney General Garland a letter requesting records and information relating to,

*inter alia*, allegations of improprieties and whistleblower retaliation connected to the Weiss's

investigation of Hunter Biden.  Letter from Hon. Jim Jordan, Chairman, H. Comm. on the

Judiciary, to Hon. Merrick B. Garland, Att'y Gen. (May 25, 2023) ("May 25 Letter") (Ex. 3).

On its face, this was an investigative inquiry by a Congressional Committee with legislative and

oversight jurisdiction over the Department of Justice.

10.     On June 7, 2023, Weiss responded to the May 25 Letter on behalf of Attorney

General Garland.  Letter from Hon. David C. Weiss, U.S. Att'y D. Del., to Hon. Jim Jordan,

Chairman, H. Comm. on the Judiciary (June 7, 2023) ("June 7 Letter") (Ex. 4).

11.     As U.S. Attorney and a seasoned federal prosecutor, Weiss was well aware that

the June 7 Letter was subject to 18 U.S.C. § 1001(c)(2), and 18 U.S.C. § 1505.

12.     The June 7 Letter stated in relevant part:

I want to make clear that, as the Attorney General has stated, I have been granted ultimate
authority over this matter, including responsibility for deciding where, when, and whether
to file charges and for making decisions necessary to preserve the integrity of the
prosecution, consistent with federal law, the Principles of Federal Prosecution, and
Departmental regulations.

*Id*. at 1.

13.     On June 22, 2023, Chairman Jordan wrote to Weiss reiterating the request made

in the May 23 Letter and seeking additional records and information about both the

whistleblower allegations outlined in the May 25 Letter and Weiss's drafting of the June 7

Letter.  Letter from Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary to Hon. David C.

Weiss, U.S. Att'y D. Del. (June 22, 2023) ("June 22 Letter") (Ex. 5).

14.     On June 30, 2023, Weiss responded to the June 22, 2023 Letter.  Letter from

Hon. David C. Weiss, U.S. Att'y D. Del., to Hon. Jim Jordan, Chairman, H. Comm. on the

Judiciary (June 30, 2023) ("June 30 Letter") (Ex. 6).

15.     As U.S. Attorney and a seasoned federal prosecutor, Weiss was well aware that

the June 30 Letter was subject to 18 U.S.C. § 1001(c)(2), and 18 U.S.C. § 1505.

16.     The June 30 Letter stated in relevant part:

- As U.S. Attorney for the District of Delaware, my charging authority is
  geographically limited to my home district.  If venue for a case lies elsewhere,
  common departmental practice is to contact the United States Attorney's
  Office for the district in question and determine whether it wants to partner on
  the case.

- Here, I have been assured that, if necessary after the above process, I would
  have been granted § 515 Authority in the District of Columbia, the Central
  District of California, or any other district where charges could be brought in
  this matter.

*Id*.

17.     On June 28, 2023, Senator Lindsey Graham, Ranking Member of the Senate

Judiciary Committee, wrote to Weiss requesting information about the Hunter Biden

investigation.  Letter from Hon. Lindsey Graham, Ranking Member, S. Comm. on Judiciary to

Hon. David C. Weiss, U.S. Att'y D. Del. (June 28, 2023) ("June 28 Letter") (Ex. 7).

18.     On July 10, 2023, Weiss responded to the June 28 Letter.  Letter from Hon.

David C. Weiss, U.S. Att'y D. Del., to from Hon. Lindsey Graham, Ranking Member, S. Comm.

on the Judiciary (July 10, 2023) ("July 10 Letter") (Ex. 8).

19.     As U.S. Attorney and a seasoned federal prosecutor, Weiss was well aware that

the July 10 Letter was subject to 18 U.S.C. § 1001(c)(2), and 18 U.S.C. § 1505.

20.     The July 10 Letter stated in relevant part:

- [I]n this case, I have not requested Special Counsel designation pursuant to 28 CFR § 600 *et seq*.  Rather, I had discussions with Departmental officials regarding potential appointment under 28 U.S.C. § 515, which would have allowed me to file charges in a district outside my own without the partnership of the local U.S. Attorney.  I was assured that I would be granted this authority if it proved necessary.  And this assurance came months before the October 7, 2022, meeting referenced throughout the whistleblowers' allegations.

- In this case, I've followed the process outlined in my June 30 letter and have never been denied the authority to bring charges in any jurisdiction.

*Id*.

## ATTORNEY GENERAL GARLAND'S STATEMENTS ABOUT U.S. ATORNEY WEISS'S AUTHORITY OVER THE HUNTER BIDEN INVESTIGATION

21.     Attorney General Merrick B. Garland announced on August 11, 2023 that he appointed Weiss Special Counsel pursuant to 28 C.F.R. § 600.4(a).  *See* Appointment Order.

22.     The Appointment Order authorized Weiss to "conduct the ongoing [Hunter Biden] investigation [], as well as any matters that arose from the investigation or may arise from the Special Counsel's investigation or that are within the scope of 28 C.F.R. § 600.4(a)" and "to prosecute federal crimes in any federal judicial district arising from the investigation of these matters."  *Id.* at 1–2.

23.     Prior to Weiss's appointment as Special Counsel, Attorney General Garland made a number of statements to Congress and the media regarding Weiss's authority over the Hunter Biden investigation:

- "So, I am not going to comment about this investigation, but as everyone knows there is an investigation going on in Delaware by the U.S. Attorney who was appointed by the previous Administration.  I can't comment on it any further than that."  *Oversight of the United States Department of Justice: Hearing Before the H. Comm. on the Judiciary*, 117th Cong., 206 (Oct. 21, 2021) (Ex. 9).

- "So the Hunter Biden investigation, as I said even in my own nomination confirmation hearing, is being run by and supervised by the United States Attorney for the District of Delaware." *A Review of the President's Fiscal Year 2023 Funding Request for the U.S. Department of Justice: Hearing before the S. Comm. on Appropriations, Subcomm. on Justice, Science, and Related Agencies*, 117th Cong., CQ Trans. at *16–18 (Apr. 26, 2022) (Ex. 10).

- "He [Weiss] is supervising the investigation. And I'm, you know, I'm not at liberty to talk about internal Justice Department deliberations, but he is in charge of that investigation. There will not be interference of any political or improper kind." *Id.* at *16.

- "Again, he [Weiss] is the supervisor of this investigation and, you know, the normal processes of the department occur. But he is the supervisor of this investigation." *Id.* at *16.

- "Because we put the investigation in the hands of a Trump appointee from the previous Administration who's the United States Attorney for the District of Delaware. And because you have me as the Attorney General, who is committed to the independence of the Justice Department from any influence from the White House in criminal matters. *Id.* at *17.

- "Senator, following the longstanding rule of the Justice Department we don't discuss investigations or evidence that maybe—may or may not be relevant to investigations. That's a matter for the United States Attorney's office that's investigating the case." *Id.* at *18.

- "So, as the committee well knows from my confirmation hearing, I promise to leave—I promised to leave the matter of Hunter Biden in the hands of the US attorney for the District of Delaware, who was appointed in the previous administration. So, any information like that should have gone or should—or should have gone to that US attorney's offices and the FBI squad that's working with him. I have pledged not to interfere with that investigation, and I have carried through on my pledge." *Oversight of the Department of Justice: Hearing Before the Sen. Comm. on the Judiciary, 118th Cong.*, CQ Trans. at *30–33 (Mar. 1, 2023) (Ex. 11).

- "The—the US attorney in Delaware has been advised that he has full authority to—to make those kind of referrals that you're talking about, or to bring cases in other jurisdictions if he feels it's necessary. And I will assure that, if he does, he will be able to do that." *Id.* at *31.

- "He [Weiss] would have to bring—if it's in another district, he would have to bring the case in another district. But as I said, I promise to ensure that he's able to carry out his investigation and that he be able to run it. And if he

needs to bring it in another jurisdiction, he will have full authority to do that." *Id.* at *31.

- "Well, it's a kind of a complicated question.  If it—under the regulations, that kind of act, he [Weiss] would have to bring to me under—to the Attorney General.  Under the regulations, those kind of charging decisions would have to be brought.  I would then have to, you know, authorize it and permit it to be brought in another jurisdiction.  And that is exactly what I promised to do here already, that if he needs to do—bring a case in another jurisdiction, he will have my full authority to do that."  *Id.* at *31–32.

- "So, I—I don't know the answer to that.  I do—and I don't want to get into the internal elements of decision making by the US attorney.  But he [Weiss] has been advised that he is not to be denied anything that he needs.  And if that were to happen, it should ascend through the department's ranks.  And I have not heard anything from that office to suggest that they're not able to do everything that the US attorney wants to do."  *Id.* at *32.

- "I can't comment about the investigation, other than to say that all the matters involving Mr. Hunter Biden are the purview of the US attorney in Delaware. He's not restricted in his investigation in any way."  *Id.* at *138.

- "Yes, it's still the case that I stand by my testimony, and I refer you to the U.S. attorney for the District of Delaware who is in charge of this case and capable of making any decisions that he feels are appropriate."  Alexander Mallin, et. al., *Garland repsonds to IRS agent's claim Hunter Biden probe is being mishandled*, at *1, ABC News (May 2, 2023) (Ex. 12).

- "As I said at the outset, Mr. Weiss, who was appointed by President Trump as the US attorney in Delaware and assigned this matter during the previous administration would be permitted to continue his investigation and to make a decision to prosecute anyway in which he wanted to and in any district in which he wanted to. Mr. Weiss has since sent a letter to the House Judiciary Committee confirming that he had that authority.  I don't know how it would be possible for anybody to block him from bringing a prosecution, given that he has this authority."  Press Conference, *Justice Dep't Holds News Briefing on China-Based Chemical Manufacturing Companies and Arrests of Executives in Fentanyl Manufacturing, Stmt. of Merrick Garland , Att'y Gen.*, at *17–18 (June 23, 2023) (Ex. 13).

- "I say, [Weiss] was given complete authority to make all decisions on his own. *Id*. at *18.

- "The only person with authority to make somebody a special counsel or refuse to make somebody a special counsel is the attorney general.  Mr. Weiss never made that request to me. *Id*.

- "Mr. Weiss had in fact more authority than a special counsel would have had. He had and has complete authority, as I said, to bring a case anywhere he wants in his discretion.  *Id*. at *19.

**INTERNAL REVENUE SERVICE WHISTLEBLOWER STATEMENTS ABOUT WEISS'S AUTHORITY OVER THE HUNTER BIDEN INVESTIGATION**

24.     On May 26, 2023, the House Ways and Means Committee conducted a transcribed interview with Gary A. Shapley, Jr.  Transcript of Interview of Gary A. Shapley, Jr. (May 26, 2023) ("Shapley Trans.") (Ex. 14).  Shapley was not under oath, but Committee staff admonished him that his testimony was subject to 18 U.S.C. § 1001.  *Id.* at 5.

25.     Shapley has been an IRS criminal investigator since 2009 and has served as a Supervisory Special Agent or Acting Assistant Special Agent in Charge since April 2018.  *Id.* at 8–9.  Prior to October of 2022, Shapley had received numerous awards from both the IRS and the Department.  *Id*. at 9.  Shapley testified that his experience included "investigat[ing] and manag[ing] some of the largest cases in U.S. history and of the history of the agency, recovering over $3.5 billion for the United States Government."  *Id.*

26.     Shapley supervised the IRS Criminal Investigations component of the Hunter Biden investigation from January 2020 through May 15, 2023.  *Id.* at 12, 32.  He did so in his capacity as leader of "the International Tax and Financial Crimes group, or the ITFC," which "is comprised of 12 elite agents who were selected based on their experience and performance in the area of complex high-dollar international tax investigations."  *Id.* at 12.

27.     Shapley testified that he had "absolutely no political activities in [his] past."  *Id*. at 11.  He continued by stating "I vote for the candidate, not the party.  I have voted for Presidents with both an R and/or a D in front of their names."  *Id.*

28.     On June 1, 2023, the House Ways and Means Committee conducted a transcribed interview with Joseph Ziegler.[1]  Transcript of Interview with Joseph Ziegler (June 1, 2023) ("Ziegler Trans.") (Ex. 15).  Like the Shapley interview, Committee staff admonished Ziegler that his testimony was subject to 18 U.S.C. § 1001, but not under oath.  *Id.* at 5.

29.     Ziegler is a 13-year veteran of the IRS (*id.* at 11) who since November 2018 served on the International Tax and Financial Crimes group.  *Id.* at 12.  Ziegler initiated the IRS investigation of Hunter Biden and served as case agent.  *Id.* at 17.

30.     Ziegler addressed certain public attacks directed at him:

> I'm an American, and my allegiances are to my country and my government.  I'm also a gay man. I have a husband, two dogs, a home, and a life full of family and friends.  But above all else, I'm a human being.  My sexuality doesn't define me as a person.  It's just who I love.  I'd like to say one more thing regarding this topic of sexuality, especially since it's the start of Pride Month.  But people have said that I'm gay and people have said, because I'm gay and that I am working as the case agent on this investigation, that I must be a far-left liberal, perfectly placed to fit some agenda.  This was stuff that was on social media regarding me.  I can tell you that I am none of those things.  I'm a career government employee, and I have always strived to not let politics enter my frame of mind when working cases.

*Id.* at 10.  He continued, "I've tried to stay so nonpolitical that in the last Presidential election I voted but had decided to not vote for the Presidential candidate because I didn't want to be asked that question in a court proceeding in the future and I didn't want to show any potential bias."  *Id.*

31.     That said, Ziegler indicated that "[m]y political beliefs are simple.  I'm as middle of the road as they come but would consider myself to be a Democrat.  When I was younger, I grew up in a conservative household.  I also held conservative beliefs.  But over time those beliefs have changed."  *Id*. at 10.

---

[1]  When he sat for his interview, Mr. Ziegler was anonymous.  He has since revealed his identity and this Complaint will refer to previously anonymous testimony as that of Mr. Ziegler.

32.     Ziegler noted that he "paid for [his] own flight to be here in front of you," and testified further he had "not accepted any payments from anyone in coming here, and I have legal representation through my attorney, Dean Zerbe." *Id.* at 9.

33.     On July 19, 2023, Shapley and Ziegler testified before the House Committee on Oversight and Reform. *Hearing with IRS Whistleblowers About the Biden Criminal Investigation, Hearing before the H. Comm. on Oversight and Accountability, 118th Cong.* CQ Trans. (July 19, 2023) (Ex. 16).

## WHISTLEBLOWER STATEMENTS CONCERNING WEISS'S AUTHORITY

34.     Shapley testified that in March of 2022, Weiss' Office and attorneys at the DOJ Tax Division ("DOJ Tax") recommended prosecution of Hunter Biden in the District of Columbia for felony tax violations related to tax years 2014 and 2015. Shapley Trans. at 23–24. He also provided a signed recommendation in which the AUSA in Weiss' Office managing the case—Lesley Wolf—concurred in those charges. *Id.* Shapley testified that, "I know Weiss agreed with these charges" when asked whether Weiss himself concurred. *Id.* at 142, *see also id.* 141–43.

35.     Shapley testified that DOJ Tax prepared a prosecution memorandum that was presented to the U.S. Attorney's Office for the District of Columbia. *Id.* at 24. Shapley stated he and Ziegler asked to be present for the presentation of the case to the District of Columbia, "but were denied." Shapley Trans. at 24; *accord* Ziegler Trans. at 36. Shapley forthrightly offered that he had not seen the prosecution memorandum, but that it was "described to me as supporting those years [2014 & 2015] and charging those years." *Id.* at 64–65.

36.     Ziegler testified at some point in this process "on or about March 14th 2022" the team from Weiss's Office and DOJ Tax had a conference with Hunter Biden's counsel to hear Hunter Biden's explanations for why he ought not be charged.  Ziegler Trans. at 34.

37.     Ziegler testified that:

I am told that it [the case] was sent to the line attorneys in the D.C. U.S. Attorney's Office.  They got my prosecution report, all the information that we had, and said, hey, we want to open up this case here.  The line attorneys there said, here's the process.  We'll get you guys going.

*Id.* at 36.

38.     Shapley testified that he believed that AUSA Wolf and Mark Daly, the lead attorney on the Hunter Biden investigation from the Department's Tax Division (Shapley Trans. at 36) presented the case to the First Assistant in the District of Columbia.  *Id.* at 65.  Shapley confirmed Ziegler's testimony concerning the result of that meeting:  "Mark Daly telephoned the case agent [Ziegler] and stated that the First Assistant at the D.C. U.S. Attorney's Office was optimistic and had stated she would assign an AUSA to assist."  Shapley Trans. at 24; *accord id.* at 65 ("and the first meeting was Mark Daly called my case agent [Ziegler] and said, 'Hey, looks good, they're going to assign AUSA.'").

39.     Ziegler then testified that:

[A] couple days later after that meeting, I get a phone call.  And this is—from my recollection, from Mark Daly, the DOJ Tax attorney.  And I think he was a little bit too forward with his information he gave me.  But he basically said that now that the U.S. Attorney looked at the case, they don't want to move forward with it.  And essentially what he told me is that not only are they not going to join the case and give us assistance—so give us another AUSA, give us someone to help there—they also told our prosecutors that they don't think we have—that we can—or they don't think that we have the charges—or not the ability, but the evidence for the charges to charge in D.C.  So not only was it a, no, we're not going to help you, but it was a, you shouldn't bring the charges here, essentially.

Ziegler Trans. at 36.[2]  Shapley again confirmed this testimony: "Just a couple days later, Mark Daly called the case agent back and told him that the President Biden appointee to the United States Attorney for the District of Columbia, Matthew Graves, personally reviewed the report and did not support it."  Shapley Trans. at 23; *accord id.* at 65 ("And then it was 2 or 3 days later, Mark Daly calls and says, 'No, they don't support it.  So we're basically dead in the water.'").

40.     At that point both Shapley and Ziegler testified that they performed additional investigative work to further develop the case for prosecuting the 2014 and 2015 tax years and held additional meetings to discuss bringing charges for those years in the District of Columbia. Shapley testified that he thought the additional investigative work was being performed because Weiss had independent authority to charge the case in the District of Columbia:  "From March 2022 through October 7th, 2022, I was under the impression that, based on AG Garland's testimony before Congress and statements by Weiss and prosecutors, that they were still deciding whether to charge 2014 and 2015 tax violations."  *Id.* at 25.

41.     Shapley explained that "For 2 months we were working to combat the potential defenses."  *Id.* at 65.  Ziegler described the process as follows:

> So that all happened.  So we're no longer talking about D.C. anymore.  Now we have—the defense is presented 2014, 2015, and I was having a lot of issues with the DOJ Tax attorneys and the AUSA regarding 2014 to 2015, because now they're doubting it.  So what we ended up doing is reinvestigating all of it.  We ended up looking at the evidence, and we found emails that actually showed that Hunter Biden [had] planned [for] what happened that caused him to essentially evade his taxes for 2014.  We presented this.  We dug into it.  We figured this all out. . . .  But we dug through this all.  And then we were like, we finally figured it

_____

[2]  Ziegler also summarized the events as follows:  "So the first impression from the D.C. U.S. Attorney's Office was, yeah, this all looks great.  Here's the process.  It didn't sound like they were going to move to say no to it.  It sounded like, hey, the lower-level attorneys were like, whatever we need to do to get this going.  And then it changed.  So, I mean, that was frustrating for me.  But at the end of the day—they're following this normal process that they call[ed] it." Ziegler Trans. at 36.

out.  This is why this happened.  And it felt like the line attorneys weren't listening to us.  They weren't following the evidence.  They were saying, well, they provided this defense, so that's the way it has to be, versus us looking at it like, well, no, let's figure out the way that the evidence shows us.

Ziegler Trans. at 37.

42.     Both Shapley and Ziegler testified concerning a June 15, 2022 meeting at Main

Justice.  As Ziegler recounted it:

> And at that same time—so this is in mid-June—we met with David Weiss and all the leadership.  Including FBI, ASAC, SAC, all the people from FBI, and Stuart Goldberg, the [Acting Assistant Attorney General] of Tax Division.  We all met in D.C.  We were able to present on the findings regarding 2014, 2015, the case, and moving forward related to it.

Ziegler Trans. at 38.  Asked who exactly was in the meeting, Ziegler testified:

> So you had the SAC and ASAC at the time of FBI.  You had my leadership, which included my supervisor.  Gary Shapley.  That included my SAC at the time.  So that would have been Darrell Waldon.  And I believe my DFO was also present there.  I could be wrong on that.  His name was Mike Batdorf.  Stuart Goldberg was there.  He was the DAG.  David Weiss was there.  Lesley Wolf, Jack Morgan, Mark Daly, and then the agents from the FBI who were part of the case team.

*Id.* at 164.

43.     In Ziegler's view, the purpose of the meeting had been misrepresented to the IRS

Team:

> So June 15th, 2022, the meeting with Stuart Goldberg, [Acting Deputy Assistant Attorney General].  The meeting with DOJ Tax at Main DOJ where the purpose of the meeting was misrepresented to the agents.  We had no idea that they were going to bring up a huge presentation to everyone there regarding the reasons why we shouldn't charge this case.

*Id.* at 160–61.

44.     Ziegler testified that "Jack Morgan and Mark Daly" (DOJ Tax attorneys) gave the

presentation; Weiss did not.  *Id.* at 161.  Ziegler was later asked by Minority Counsel "[b]ut they

had a whole presentation prepared on their decision not to charge?"  *Id.* at 164.  Ziegler

14

responded by reiterating and reaffirming his prior testimony: "It wasn't on their decision not to charge. It was all the reasons why we shouldn't charge for 2014, 2015." *Id.* Ziegler then explained that in his view the issues raised by the presentation as cutting against prosecution had been completely dealt with by the additional investigative work they conducted: "And what me and the investigator did is we figured it out. We found out stuff after that that we didn't know before." *Id.* Ziegler explained elsewhere, "[w]e were constantly pushing David. We were pushing our leadership with—I'm using the wrong word. We were reciting what the evidence showed." *Id.* at 38.

45.     Shapley testified consistently:

[T]hat 6-15-2022 meeting at Main DOJ, Stuart Goldberg, Weiss, and everyone underneath is there, every level of everyone underneath is there. And this was when DOJ Tax was kind of giving a presentation about potential problems with '14, '15. Now they've already tried to bring it to D.C. They already requested special counsel and got denied. So now they're kind of trying to make this evidential issue for those years. So on the side of that, in a break, Weiss comes up and he's talking to me on the side, and comes up, the case agent. And Weiss was like, you guys always convince me, I agree with this, and then DOJ Tax tells me something else. So I know that Weiss agreed with these charges, and—I don't know. At the end of the day, they should've been charged. I offered to give prosecution recommendation reports from previous cases to show precedent, to show specific examples of this loan issue and how this would follow a precedent in other cases being charged, and it just kind of fell on deaf ears.

Shapley Trans. at 142.

46.     The Whistleblowers' testimony documents continuing discussions with the Department concerning charging Hunter Biden in the District of Columbia for the 2014 and 2015 tax years. Shapley testified that:

In our July 29th, 2022, prosecution team call, AUSA Wolf told us that United States Attorney Weiss indicated that the end of September would be his goal to charge the 2014 and 2015 years, because they did not want to get any closer to a midterm election. She also said: "The X factor on timing will include any delay defense counsel has requested."

Shapley Trans. at 27.

47.    Ziegler testified that:

Ultimately, what happened is we have a meeting.  A phone call.  It's in early
August.  And we get a phone call, all the teams on it together.  So AUSA Lesley
Wolf, Carly Hudson, Jack Morgan, and Mark Daly, DOJ Tax.  And they say at
that meeting that we are going to approve the recommendation of charges for
the—and this is from my recollection.  They are going to approve the
recommendation of charges for the 2017, 2018, and 2019 tax years and that the
venue for those—the appropriate venue for those is California.  They were not
approving 2014, 2015.  And I don't remember if it included 2016.  I can't
remember that off the top of my head. . . .  I want to say one more thing.  We also
learned that they gave what's called discretion.  This is what I was told.  This is
from my memory.  But that they didn't get full on approval.  They gave discretion
to charge the case.  From my understanding with Tax Division, if they were to
approve the charges, according to policy, California would have to charge the
case.

Ziegler Trans. at 38–39.

48.    Ziegler further testified:

So we have one last meeting with David Weiss, U.S. Attorney in Delaware, in
early September—it was either end of August, early September 2022—to talk
about the 2014, 2015 tax year.  And at that meeting, David says to us—and this is
from my recollection—that he agrees with us regarding the 2014, 2015 tax year.
They're great.  Yes, we investigated it.  We figured it out.  But he has been
getting concerns from DOJ Tax regarding the tax years because they viewed that,
at a trial—that it could affect the later years.  That the information regarding the
subject's brother's death, the substance abuse—that all those things could play a
huge role and cause the jury to say essentially—to have sympathy for him and to
not convict on the charges.  At that time, David is telling us, well, I'm still
weighing it.  I love the 2014, 2015.  Essentially, I want to charge it.  And at that
meeting, he tells us—we ask him, when are we going to charge?  And he says,
well, hopefully end of September.  It was kind of up in the air.

*Id.*  Ziegler elaborated on this meeting:

In that meeting he had alluded that DOJ Tax was of the mindset that the jury's
sympathy—related to the death of his brother and the drug use—would affect the
later tax years, and that David, at that time, was weighing whether to go forward
based on that or not because he was getting swayed one way or the other.  And
David said he felt strongly with the evidence and what we were presenting.

*Id*. at 91.

49.     On October 7, 2022, a critical meeting for the purposes of this case occurred.

*E.g.*, Shapley Trans. at 28–29.  Shapley testified that the following individuals were present:

> So from the FBI it was SAC Tom Sobocinski, ASAC Ryeshia Holley.  IRS SAC
> Darryl Waldon.  I was ASAC at the time, and I was there.  And it was U.S.
> Attorney David Weiss and then Shawn Weede.  And Shannon Hanson.  So I don't
> know what Shawn Weede and Shannon Hanson's titles are, but they were like
> David Weiss' one and two type person.  Probably crim chief, first assistant, that
> area.

*Id.* at 178–79.

50.     Shapley's testimony described the meeting as follows:

> The next meeting was in person on October 7th, 2022, and it took place in the
> Delaware U.S. Attorney's Office.  This meeting included only senior-level
> managers from IRS CI, FBI, and the Delaware U.S. Attorney's Office.  This
> ended up being my red-line meeting in our investigation for me.  United States
> Attorney Weiss was present for the meeting.  He surprised us by telling us on the
> charges, quote:  "I'm not the deciding official on whether charges are filed,"
> unquote.  He then shocked us with the earth-shattering news that the Biden-
> appointed D.C. U.S. Attorney Matthew Graves would not allow him to charge in
> his district.  To add to the surprise, U.S. Attorney Weiss stated that he
> subsequently asked for special counsel authority from Main DOJ at that time and
> was denied that authority.  Instead, he was told to follow the process, which was
> known to send U.S. Attorney Weiss through another President Biden-appointed
> U.S. Attorney.  This was troubling, because he stated that, if California does not
> support charging, he has no authority to charge in California.  Because it had been
> denied, he informed us the government would not be bringing charges against
> Hunter Biden for the 2014–2015 tax years, for which the statute of limitations
> were set to expire in one month.  All of our years of effort getting to the bottom of
> the massive amounts of foreign money Hunter Biden received from Burisma and
> others during that period would be for nothing.  Weiss also told us that if the new
> United States Attorney for the Central District of California declined to support
> charging for the 2016 through 2019 years, he would have to request special
> counsel authority again from the Deputy Attorney General and/or the Attorney
> General.  I couldn't understand why the IRS wasn't told in the summer of 2022
> that D.C. had already declined charges.  Everyone in that meeting seemed
> shellshocked, and I felt misled by the Delaware United States Attorney's Office.
> At this point, I expressed to United States Attorney Weiss several concerns with
> how this case had been handled from the beginning.  The meeting was very
> contentious and ended quite awkwardly.  It would be the last in-person meeting I
> had with United States Attorney Weiss.

*Id.* at 28–29.

51.     Shapley prepared a contemporaneous email to his supervisors to document the

October 7 meeting.  As he testified:

> A.  . . .  I realized the gravity of what I just witnessed, so I didn't want it to be a memo to file that didn't go anywhere else.  So I did this to ensure that my information was corroborated right then, right there.
> Q.  Right.
> A.  So that people couldn't—
> Q.  Right.  So this is essentially your contemporaneous notes from that business meeting, correct?
> A.  Yeah.

*Id.* at 149.  Shapley indicated that he "told [SAC Waldon] that I would be the one that would

summarize it [the October 7 Meeting] for Mike, the DFO, Batdorf, and I said that I'd cc you so

that you can confirm."  *Id.*

52.     The memorandum reads as follows:

**From:** Shapley Gary A Jr <█████████████████>
**Sent:** Friday, October 07, 2022 6:09 PM
**To:** Batdorf Michael T <████████████████>
**Cc:** Waldon Darrell J <███████████████>
**Subject:** Sportsman Meeting Update

Mike,

Darrell asked me to shoot an update from todays meeting.  Darrell – feel free to comment if
I miss something.

1. Discussion about the agent leak – requested the sphere stay as small as possible
   a. DOJ IG will be notified
   b. FBI – HQ is notified and they refer it to their Counter Intelligence squad in a
      field office for investigation
   c. IRS-CI – <mark>We need to make a referral to TIGTA</mark> – What do you need from me
      on this action item?
2. <u>Weiss stated that he is not the deciding person on whether charges are filed</u>
   a. I believe this to be a huge problem – inconsistent with DOJ public position
      and Merrick Garland testimony
   b. Process for decision:
      i. Needs DOJ Tax approval first – stated that DOJ Tax will give
         "discretion" (We explained what that means and why that is
         problematic)
      ii. No venue in Delaware has been known since at least June 2021
      iii. Went to D.C. USAO in early summer to request to charge there –
      Biden appointed USA said they could not charge in his district
         1. USA Weiss requested Special counsel authority when it was
            sent to D.C and Main DOJ denied his request and told him to
            follow the process

EXHIBIT

10

      iv.  Mid-September they sent the case to the central district of
California – coinciding with the confirmation of the new biden
appointed USA – decision is still pending

      v.  If CA does not support charging USA Weiss has no authority to
charge in CA –

          1.  He would have to request permission to bring charges in CA
from the Deputy Attorney General/Attorney General
(unclear on which he said)

      vi.  With DOJ Tax only giving "discretion" they are not bound to bring
the charges in CA and **this case could end up without any charges**

3.  They are not going to charge 2014/2015 tax years

    a.  I stated, for the record, that I did not concur with that decision and put on
the record that IRS will have a lot of risk associated with this decision
because there is still a large amount of unreported income in that year from
Burisma that we have no mechanism to recover

    b.  Their reason not to charge it does not overcome the scheme and affirmative
acts – in my opinion

4.  FBI SAC asked the room if anyone thought the case had been politicized – we can
discuss this is you prefer

5.  No major investigative actions remain

6.  Both us and the FBI brought up some general issues to include:

    a.  Communication issues

    b.  Update issues

    **c.  These issues were surprisingly contentious**

Always available to discuss.  Have a great weekend!

Text  Description automatically generated

Shapley Trans. Ex. 10.  SAC Waldon expressly confirmed the accuracy of Shapley's account of

the October 7 meeting in writing:

| From: | Waldon Darrell J |
|---|---|
| To: | Shapley Gary A Jr; Batdorf Michael T |
| Subject: | RE: Sportsman Meeting Update |
| Date: | Tuesday, October 11, 2022 7:27:14 AM |
| Attachments: | Image001.png |

Good morning, all –

Thanks, Gary. You covered it all. I am taking care of referral to TIGTA.

Mike – let me know if you have any questions.
Darrell

*Darrell J. Waldon*
*Special Agent in Charge*
*Washington, D.C. Field Office*
(C) ▓▓▓▓▓▓▓▓

*Id.*

53.    Shapley was questioned specifically on his written account of Weiss's authority:

Q.  . . .  It's pretty remarkable that the U.S. attorney on October 7th said he is not the deciding official.  Did he say it in those words?
A.  Yeah.  He said, I am not the deciding person on whether charges are filed.
Q.  So there's no ambiguity, he was crystal clear in what he was saying?
A.  It was how I understood it, and it was also how the special agent in charge understood it.

*Id.* at 151.

54.     Shapley was candid that he obtained his information on Weiss's authority and actions directly from Weiss, but did not have independent knowledge:  "All I know is what he told me he did, and that's all I can say, I think, to that."  *Id.* at 143.  Shapley was also forthright that he did not know precisely when Weiss sought and was denied special counsel status:

Q.  I know you're not sure of when the U.S. Attorney for Delaware asked for special counsel status, but do you have a timeframe?  Sometime between March and January of 2023?  Is that fair?
A.  My understanding was that it was right in March after he was told by Matthew Graves that they didn't support it.

*Id.* at 101–02.

55.     Ziegler was not present at the October 7, 2022 meeting, but his testimony concerning what he was told about the meeting both corresponds with Shapley's account and reflects Shapley's contemporaneously related account:

MAJORITY COUNSEL 1.  On the issue of special counsel authority, do you know whether U.S. Attorney Weiss requested special counsel authority?
Mr. Ziegler].  I only know this secondhand from what my supervisor told me after that October 7th meeting, that—
MAJORITY COUNSEL 1.  And this is what you know—[who did you hear this] from secondhand?
Mr. Ziegler.  I know this from Gary—my supervisor, Gary Shapley—telling me about what happened during that meeting.  That—
Mr. Zerbe.  Let's go off.
[Discussion off the record.]
Mr. Ziegler.  So I heard it was a contentious meeting.  My SAC and my supervisor were there.  There were members from FBI there.  And they had asked him about this, about bringing the case in D.C., and he explained that he was essentially told no.  And then he went back and asked for special counsel authority, and they told him no.  I don't think they said who he went back to, but they told him no.

BY MAJORITY COUNSEL 1:
Q.  So you don't know who he requested special counsel authority from?
A.  Yes, I do not know that.  But I know that they ultimately said:  No, follow the normal process.
Q.  Do you know when he requested special counsel status?
A.  That, I do not know.
Q.  Do you know if he did it more than one time?
A.  That, I do not know.

Ziegler Trans. at 114–15; *accord id.* at 40 ("October 7th was the meeting with the leadership and David Weiss.  And that's where those statements were made regarding David saying, I'm not the deciding official on whether charges are filed.  He has no authority to charge in California, essentially, is what is told to me about that meeting.").

56.     Shapley and Ziegler both indicated that their involvement on the Hunter Biden Investigation was substantially reduced from this point on until their removal from the case on May 15, 2023.

57.     Shapley did testify that "[i]n January of this year, I learned United States Attorney Estrada had declined to bring the charges in the Central District of California."  Shapley Trans. at 31; *accord id.* at 152.  Ziegler testified consistently.  *See* Ziegler Trans. at 158–59.  Shapley also testified:

Q.  And do you know if he asked for special counsel status at any time before he brought the case to the Central District of California?
A.  For California?
Q.  Yes.
A.  I don't know that.  But in the October 7th meeting, he did say that if California tells him no, he has no authority to charge in California, and that he would have to request special counsel authority in order to charge it.

Shapley Trans. at 102.

58.     Both whistleblowers testified to a number of further important events in 2023. Specifically relevant here, Shapley testified:

On March 16th, 2023, DOJ Tax Mark Daly was overheard on his telephone by one of my agents.  Mark Daly was talking to DOJ Tax Attorney Jack Morgan.

Mr. Daly stated that they would give United States Attorney Weiss the approvals required if he wanted them, but that he had no idea where he planned to charge Hunter Biden.  This indicates that after the Central District of California declined to allow charges to be brought there, the only route to United States Attorney Weiss was to request special counsel authority.  It appears that this case was not moving forward until Senator Grassley asked pointed questions that held AG Garland accountable.

*Id.* at 31–32.

59.     Both Whistleblowers were questioned at length as to their views on whether Attorney General Garland's testimony on April 26, 2022 and March 1, 2023 concerning Weiss's independence and authority was consistent with their knowledge of the facts.  *See* Shapley Trans. at 66–70; Ziegler Trans. at 109–14.  Ziegler did not directly opine on the matter, reserving the ultimate judgement to the Committee.  Shapley, on the other hand, did engage in factual analysis at several points.

60.     First:

Q.  . . .  Senator Grassley, on March 1st of 2023, so a whole year had gone by, asked the Attorney General about this, and the Attorney General responded—you mentioned this—"I promised to leave the matter of Hunter Biden in the hands of the U.S. attorney for the District of Delaware . . . I have pledged not to interfere with that investigation, and I have carried through on my pledge."  Is that a true statement?
A.  It's not accurate.  No, it's not accurate

Shapley Trans. at 67.

61.     Second:

Q.  . . . .  Okay. I'll just say it again.  The Attorney General said that he, meaning U.S. Attorney Weiss, "has full authority to make those kind[s] of referrals that you are talking about or bring cases in other jurisdictions if he feels it's necessary. And I will assure that if he does, he will be able to do that."  Are you aware that the Attorney General responded in that way?
A.  Yes, I am.
Q.  Is that true?
A.  No, that's not.  Based on what actually happened, as well as the statements provided by U.S. Attorney Weiss, those statements are false.

*Id.* at 68.

62.    Third:

Q. . . . .  And the Attorney General followed up, and he said:  "I don't know the answer to that, and I don't want to get into the internal elements of the decision making by the U.S. attorney.  But he has been advised that he is not to be denied anything he needs.  And if that were to happen, it should ascend through the Department's ranks.  But I have not heard anything from that office to suggest that they're not able to do everything the U.S. attorney wants to do."  Do you think it's conceivable that the DAG's office or the head of DOJ Tax kept that information from the Attorney General?
A.  I feel like it's my opinion that you wouldn't make statements like that if you thought that was the case.

*Id.* at 70.

### MICHAEL BATDORF'S STATEMENTS ABOUT WEISS'S AUTHORITY

63.    On September 12, 2023, the House Ways and Means Committee conducted a transcribed interview of Michael Batdorf.  Transcript of Interview of Michael Batdorf (Sept. 12, 2023) ("Batdorf Trans.") (Ex. 17).  Batdorf was not under oath, but Committee staff admonished him that his testimony was subject to 18 U.S.C. § 1001, which makes it a crime to lie to Congressional investigators.  *Id*. at 5.

64.    Batdorf serves as the Director of Field Operations for IRS Criminal Investigations, overseeing field operations in the Washington D.C., Charlotte, Atlanta, Tampa, Miami, Dallas, and Houston Field Offices.  *Id*. at 8.  He has served in various roles as a federal criminal investigator with the IRS since 2001.  *Id*. at 11.

65.    Batdorf testified that he was aware of an IRS CI Special Agent Report written in February 2022 recommending Hunter Biden be charged with both misdemeanor and felony tax counts.  *Id*. at 17–18.  He told the Committee he "agreed with all the charges recommended" in the report.  *Id*. at 19.

66.    Batdorf testified about a meeting on or about June 15, 2022 with "Weiss, DOJ

Tax, IRS CI, [and] FBI to discuss [the Hunter Biden] investigation." *Id*. at 15.  He confirmed to the Committee that the IRS investigators were advocating for the charges against Hunter Biden recommended in the February 2022 report.  *Id*. at 21.  At the meeting, Batdorf, Shapley, and Ziegler "present[ed]" to Weiss for the purposes of "arguing for [their] investigation." *Id*. at 16. Batdorf confirmed to the Committee that there was disagreement amongst the attendees of the meeting as to pursuing charges.  *Id*.  DOJ Tax presented an opposing view from IRS IC on whether to charge Hunter Biden.  *Id*. at 21–22.  Nothing in DOJ Tax's presentation made Batdorf change his views of the charges recommended in the February 2022 report.  *Id*. at 22.

67.     Batdorf testified that he believed Shapley requested the meeting with Weiss and other DOJ components because of perceived irregularities with DOJ's conduct during the investigation.  To wit:

> Q:  Who called that meeting?
> A:  I believe it was Agent Shapley that requested that meeting from DOJ.
> Q:  Do you have a sense of why?
> A:  I believe at the time my sense of what was going on is that DOJ Tax was having taxpayer conferences with defense counsel.
> Q:  Do you know how many times they had conferences with defense counsel?
> A:  More than two. And I cannot remember if they were trying to plan their third or their fourth.
> Q:  In a typical—is it typical in a tax investigation to meet with defense counsel two, three, four times?
> A: No.

*Id*. at 16–17.

68.     Batdorf testified that he believed Weiss required authorization from DOJ Tax to bring charges and that Weiss indeed did not possess ultimate authority over where, when, and what charges to bring against Hunter Biden.  To wit:

> Q:  Okay. So at the time of the June 15th meeting, so the meeting we've just been discussing, was it your view that David Weiss had the authority to bring this case, any charges he wanted, in any jurisdiction he wanted?
> A:  It was my view that—well, DOJ Tax had not authorized any charges at that

time. So DOJ Tax would have to authorize charges prior to David Weiss recommending an indictment or prosecution.

Q:  Okay.

A:  And that was part of why the June meeting happened, was to see where we're at with those authorizations.  It was my understanding that—I'm not sure about any judicial district.  My understanding is that David Weiss could request special counsel if he needed to, or he could prosecute in the district that he needed to related to this case, and there were venue issues.

Q:  Okay. And I just want to get your understanding at that time.  So was it your understanding that he could ask for special counsel status to be able to file in a jurisdiction outside of Delaware, which is his jurisdiction?

A:  His jurisdiction is Delaware.  My understanding was that he could—I'm trying to think back to the June date and what my understanding was at that June date.  I mean, he had the ability to ask other judicial districts to prosecute in their district or request special counsel.

Q:  Okay. But at this stage, at the June time frame, we're still talking about getting DOJ Tax sign-off—

A:  Correct.

Q:  —before that step would happen?

A:  Yeah.

*Id*. at 22–23.

69.    Following the October 7 meeting, Batdorf received the email from Shapley summarizing the meeting and highlighting Weiss's comments that he lacked ultimate authority on whether to file charges against Hunter Biden.  *See*, Compl. ¶ 52, *supra*.  He confirmed to the Committee that it was his understanding that DOJ Tax would need to authorize charges in this investigation.  He testified about Shapley's email:

Q:  Okay.  Number 2: "Weiss stated that he is not the deciding person on whether charges are filed." And we just talked about that he would need DOJ Tax approval or to ask for special attorney, special counsel status.  So this statement in number 2, was that consistent with your understanding at the time?

A:  That he is not the deciding person?  I mean, my understanding would be that DOJ Tax has to authorize it first.  So, I mean, my understanding is that, I mean, he can't make that decision without DOJ Tax authorization.

Batdorf Trans. at 27–28.

70.    Batdorf affirmed his belief that there were "venue issues" with the Hunter Biden investigation.  *Id*. at 29.

26

## WEISS CONGRESSIONAL TRANSCRIBED INTERVIEW AND HOUSE STAFF REPORT

71.     On November 7, 2023 Weiss sat for a transcribed interview with Congressional Committee Staff.

72.     On December 5, 2023, the House Committees on Oversight and Accountability, the Judiciary, and Ways and Means (the "Committees") released a wealth of evidence detailing that President Joseph R. Biden Jr.'s Department of Justice almost certainly *did* provide preferential treatment to Hunter Biden and then compounded that sin by engaging in a number of efforts to cover up that fact.  *See Interim Staff Report of Committee on the Judiciary, the Committee on Ways and Means, and the Committee on Oversight and Accountability, The Justice Department's Deviations from Standard Processes in Its Investigation of Hunter Biden* (Dec. 5, 2023) ("Joint Staff Report") (Ex. 18).

73.     Weiss stated that he had *already* been denied the ability (authority) to bring charges against Hunter Biden outside Delaware on at least three occasions throughout 2022—months *before* he sent the June 7 Letter to Congress.

74.     The Joint Staff Report states that in February 2022:

Weiss sought to obtain special attorney status from the Department for the purpose of filing charges against Hunter Biden in D.C. and California.  However, by Weiss's own admission, the Biden Justice Department did not approve his request and instead instructed him to go through the process of asking the U.S. Attorneys in D.C. and the Central District of California to partner with him on the prosecution.

Joint Staff Report at 44 (footnotes and citations omitted).

75.     Weiss stated in his transcribed interview:

A.  I initiated email contact with Mr. Carlin, and I subsequently had a conversation with [then-Principal Associate Deputy Attorney General] John Carlin, and I believe [Associate Deputy Attorney General] Bradley Weinsheimer was on the call.

Q.  Okay.  And what did they tell you about bringing the case in D.C. or different jurisdictions from yours?

A.  We discussed the fact that I would—they wanted me to proceed in the way it would typically be done, and that would involve ultimately reaching out to the U.S. Attorney in the District of Columbia.  I raised the idea of 515 authority at that time because I had been handling the investigation for some period of time.  And, as I said, they suggested let's go through the typical process and reach out to D.C. and see if D.C. would be interested in joining or otherwise participating in the investigation.

*Id.* (quoting Transcribed Interview of David C. Weiss at 15–16 (Nov. 7, 2023) ("Weiss Trans.")).

76.    Weiss later stated in the interview with Congressional investigators:

Q.  But [515 authority] wasn't granted, right?

A.  Yes. We have been over this.  It wasn't granted.  They said, follow the process. I followed the process.  And in completing the process—

Q.  But, Mr. Weiss, when you ask for something and they don't give it to you, what is that?

A.  I asked for something, and in that conversation they didn't give it to me[.]

*Id*. at 45 (quoting Weiss Trans. at 182).

77.    The Joint Staff Report further states:

In late March or early April [2022], Weiss learned from his staff that [U.S. Attorney for the District of Columbia Matthew] Graves had decided not to partner on prosecuting the case.  Instead, Graves offered to provide Weiss's office with administrative support such as securing time before a grand jury.  Due to Graves's refusal to partner on the case, Weiss was unable to bring charges against Hunter Biden in D.C. unless the Biden Justice Department was willing to reconsider Weiss's request for special attorney status.

*Id*. at 47 (footnotes and citations omitted).

78.    The Joint Staff Report continues:

On October 19, 2022 [U.S. Attorney for the Central District of California E. Martin] Estrada informed Weiss of his decision not to partner on prosecuting the case, and that he would instead provide Weiss's office with administrative support if they needed it.  This was the third occasion on which Weiss was unable to bring charges in a district other than Delaware.

*Id*. at 48 (footnotes and citations omitted).

79.     The Justice Manual specifies that Tax Division authorization is required for taking investigatory actions in a tax investigation and for United States Attorneys to seek indictments or file any tax charges.  *See* U.S. Dep't of Just., Just. Manual §§ 6-1.110.  Multiple witnesses in Congressional transcribed interviews stated that the Department applied this  provision to the Hunter Biden case and Weiss needed authorization from the Tax Division to proceed with tax-related charges.  *See* Joint Staff Report at 50–55.

80.     Weiss's principal defense of his conduct in his transcribed interview is summarized in the Joint Staff Report:

> During his transcribed interview, Weiss defended his assertions about having "ultimate" authority over the Hunter Biden investigation as U.S. Attorney because, in his words, he was "the decisionmaker in this case," and he "didn't need anybody's permission" to make decisions."  Weiss conceded that he does not "make these decisions in a vacuum" as he is "bound by Federal law, the principles of Federal prosecution, and DOJ guidelines," and that "[a]s a result, there are processes that [he] must adhere to in making investigative and charging decisions."  Weiss contended, however, that "[t]hese processes did not interfere with [his] decisionmaking authority" as he was not "blocked or otherwise prevented from pursuing charges or taking the steps necessary in the investigation by other U.S. Attorneys, the Tax Division, or anyone else in the Department of Justice."

*Id.* at 55 (footnotes and citations omitted).

81.     Weiss's position is that the savings clause in the June 7 Letter, "consistent with federal law, the Principles of Federal Prosecution, and Departmental regulations" completely modifies "ultimate authority" such that Weiss's statement was accurate even though he had no more authority in the Hunter Biden case than any other case in his District.  The plain text of the June 7 Letter cannot bear that interpretation.  "Ultimate authority" must be given *some* meaning.  In context, it clearly delineates some sort of *additional* authority over the Hunter Biden case above and beyond any other case in the District of Delaware.  Weiss's reading would allow his

"savings clause" to drain "ultimate authority" of any substantive meaning.  The statement would be a nullity; it would say precisely nothing.  And it is impermissible to construe part of a statement to render the broader statement a nullity.

### PLAINTIFFS' FOIA REQUEST

82.     On August 15, 2023, the Plaintiffs submitted their Request.  Plaintiffs submitted the Request to the Executive Office of United States Attorneys ("EOUSA"), USADE directly, the Office of Information Policy ("OIP"), the Office of the Solicitor General, Office of Legal Counsel, the Civil Division, and Criminal Division.[3]  The Request sought all records Weiss relied upon to make the relevant statements in the June 7, June 30, and July 10 Letters, to wit:

- "I want to make clear that, as the Attorney General has stated, I have been granted ultimate authority over this matter, including responsibility for deciding where, when, and whether to file charges and for making decisions necessary to preserve the integrity of the prosecution, consistent with federal law, the Principles of Federal Prosecution, and Departmental regulations."

- "As the U.S. Attorney for the District of Delaware, my charging authority is geographically limited to my home district.  If venue for a case lies elsewhere, common departmental practice is to contact the United States Attorney's Office for the district in question and determine whether it wants to partner on the case."

- "Here, I have been assured that, if necessary after the above process, I would be granted § 515 Authority in the District of Columbia, the Central District of California, or any other district where charges could be brought in this matter."

- "[I]n this case, I have not requested Special Counsel designation pursuant to

---

[3]  For FOIA requests submitted to the Department of Justice, OIP "maintains files of administrative appeals of denials of Department of Justice records and initial request files of FOIA and Privacy Act requests for records of the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, Legal Policy, Legislative Affairs, and Public Affairs, as well as OIP's own records."  *See OIP FOIA, found at* https://www.justice.gov/oip/oip-foia.  While Plaintiffs submitted their Request to other components of the Department of Justice, the Criminal Division, Civil Division, Office of the Solicitor General, and Office of Legal Counsel informed Plaintiffs that they possess no records responsive to the Request.  These Offices' representations are not at issue in this Complaint.

28 CFR § 600 *et seq*.  Rather, I had discussions with Departmental officials regarding potential appointment under 28 U.S.C. § 515, which would have allowed me to file charges in a district outside my own without the partnership of the local U.S. Attorney.  I was assured that I would be granted this authority if it proved necessary. And this assurance came months before the October 7, 2022, meeting referenced throughout the whistleblowers' allegations."

- "In this case, I've followed the process outlined in my June 30 letter and have never been denied the authority to bring charges in any jurisdiction."

Request at 1.

83.     The Request sought expedited processing because Weiss's contradictory statements to Congress concerning his authority over the Hunter Biden investigation is "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."  28 C.F.R. § 16.5(e)(1)(iv).  *Id*. at 6–13.

84.     In support of its request for expedited processing, the Request attached seven appendices totaling 1,598 pages of supporting materials.  The appendices included:

- Appendix A:  A collection of pertinent transcripts of network news television broadcasts, national newspaper articles, and press releases related to the need for a Special Counsel to investigate Hunter Biden and questioning the Department of Justice's refusal to do so, *found at* https://thf_media.s3.amazonaws.com/2023/Oversite_Project/HBiden-SpecialCouncil_AppendixA-C.pdf

- Appendix B:  A Congressional letter from the Committee on the Judiciary to Attorney General Garland questioning why a Special Counsel has not been appointed in the Hunter Biden investigation and requesting related documents. *Id*.

- Appendix C:  A Congressional letter from Representative Ken Buck and a letter signed by 33 Senators to Attorney General Barr requesting the Department of Justice appoint a Special Counsel to investigate Hunter Biden. *Id*.

- Appendix D:  A complaint from Plaintiffs for declaratory and injunctive relief against Defendant in the United States District Court for the District of Columbia to compel the release of documents related to Weiss's status in the Hunter Biden investigation, *found at*,

https://thf_media.s3.amazonaws.com/2023/Oversite_Project/ECF%20No.%20
1%20Compl.%2023-cv-1854_AppendixD.pdf

- Appendix E:  Pleadings comprising Plaintiffs' motion for a preliminary
  injunction and relevant documents in the Action cited in Appendix D, *found at*
  https://thf_media.s3.amazonaws.com/2023/Oversite_Project/ECF%20No%20
  6%20PI_AppendixE.pdf.

- Appendix F:  A July 31, 2023 letter from the Chairman of the House
  Judiciary, Oversight and Accountability, and Ways and Means Committees to
  Attorney General Garland, *found at*
  https://thf_media.s3.amazonaws.com/2023/Oversite_Project/2023-08-15-
  Appendix%20F.pdf.

- Appendix G:  A transcript of Attorney General Garland's August 11, 2023
  announcement naming Weiss Special Counsel in the Hunter Biden
  investigation, *found at*,
  https://thf_media.s3.amazonaws.com/2023/Oversite_Project/2023-08-15-
  Appendix%20G.pdf.

85.    The Request sought a fee waiver based on the extensive national interest in, and

concern over, the truthfulness of Weiss's statements to Congress and Plaintiffs' status as a not-

for-profit entity that operates a major news outlet with a primary mission to inform the public.

*Id*. at 5–6.

## DEFENDANT'S DENIAL OF PLAINTIFFS' FOIA REQUEST

86.    On August 15, 2023, EOUSA sent Plaintiffs an email acknowledging receipt of

the Request and assigned the Request the tracking number EOUSA-2023-002939.  Email from

EOUSA to Plaintiffs (Aug. 15, 2023) (Ex. 19).  On August 18, 2023, EOUSA sent Plaintiffs a

letter acknowledging receipt of the request and invoked "unusual circumstances" under 5 U.S.C.

§ 552(a)(6)(B)(i)–(iii).  Letter from Kevin Krebs, Assistant Director, EOUSA Freedom of

Information and Privacy Staff, to Mike Howell (Aug. 18, 2023) (Ex. 20).

87.    On August 25, 2023, EOUSA denied the Request, saying that the Request did

not "reasonably describe" the records sought.  Letter from Kevin Krebs, Assistant Director,

EOUSA Freedom of Information and Privacy Staff, to Mike Howell (Aug. 25, 2023) (Ex. 21).

88.     On August 25, 2023, OIP sent a letter to Plaintiffs responding to the Request and assigning it the tracking number FOIA-2023-02258.  Letter from Douglas R. Hibbard, Chief, Initial Request Staff, Department of Justice Office of Information Policy to Mike Howell (Aug. 25, 2023) (Ex. 22).  This letter denied the Request because it was "not reasonably described in a way that will allow agency personnel to conduct an appropriate records search . . ." *Id*.

89.     On August 28, 2023, Plaintiffs appealed OIP's denial of the Request (tracking number FOIA-2023-02258).  Letter from Mike Howell to Bobak Talebian, Director, Office of Information Policy, Department of Justice (Aug. 28, 2023) ("OIP Appeal") (Ex. 23).  In the OIP Appeal, Plaintiffs provided legal and factual justifications to illustrate that the Request reasonably described the records sought.  On August 29, 2023, OIP sent Plaintiffs a letter acknowledging receipt of the OIP Appeal and assigned the OIP Appeal the tracking number A-2023-01876.  Letter from Priscilla Jones, Supervisory Administrative Specialist, Office of Information Policy to Mike Howell (Aug. 29, 2023) (Ex. 24).

90.     On September 14, 2023, Plaintiffs appealed EOUSA's denial of the Request (tracking number EOUSA-2023-002939).  Letter from Mike Howell to Bobak Talebian, Director, Office of Information Policy, Department of Justice, Sept. 14, 2023 ("EOUSA Appeal") (Ex. 25).  In the EOUSA Appeal, Plaintiffs provided legal and factual justifications to illustrate that the Request reasonably described the records sought.  *Id*.  That same day, OIP sent Plaintiffs a letter acknowledging receipt of the EOUSA Appeal and assigned the EOUSA Appeal the tracking number A-2023-02013.  Letter from Priscilla Jones, Supervisory Administrative Specialist, Office of Information Policy to Mike Howell (Sept. 14, 2023) (Ex. 26).

91.     On September 22, 2023, OIP emailed Plaintiffs and stated that Plaintiffs'

expedited processing request in the EOUSA Appeal (A-2023-02013) had been granted.  Email from OIP Administrator Email to Plaintiffs (Sept. 22, 2023) (Ex. 27).

92.      On November 1, 2023, Plaintiffs received a letter from EOUSA assigning the Request a new tracking number, EOUSA-2024-000200 and denying the request on the grounds that the Request did not "reasonably describe" the records sought.   Letter from Kevin Krebs, Assistant Director, EOUSA Freedom of Information and Privacy Staff, to Mike Howell (Nov. 1, 2023) ("November 1 Letter") (Ex. 28).  On November 6, 2023, Counsel for Plaintiffs inquired with EOUSA about this letter, noting that Plaintiffs had already received a denial letter for the Request, appealed the denial, and had been granted expedited processing for the Request.  Email from Eric Neal Cornett to EOUSA, (Nov. 6, 2023) (Ex. 29).  On November 7, 2023, EOUSA informed Plaintiffs that the letter with tracking number EOUSA-2024-0002000 was sent in error and, to disregard the November 1 Letter, and that the request tracking number EOUSA-2023-002939 controlled the Request.  Email from EOUSA to Plaintiffs (Nov. 7, 2023) (Ex. 30).

93.      On January 12, 2024, OIP denied Plaintiffs Appeal writing:  "Your request is not reasonably described because it is not characterized in a way that would allow EOUSA to conduct an appropriate search without conducting research and analysis and formulating opinions in order to determine which records were 'relied upon' by United States Attorney Weiss."  Letter from Christina Troiani to Mike Howell (Jan. 12, 2024) (Ex. 31).  OIP did not address Plaintiffs' cited contrary authority.

94.      Thirty business days from August 15, 2023 is September 27, 2023.

95.      Twenty business days from August 28, 2023 is September 26, 2023.

96.      Twenty business days from September 14, 2023 is October 13, 2023.

## FIRST CLAIM FOR RELIEF
### Violation FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Searches for Responsive Records.

97.     Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

98.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

99.     Plaintiffs properly requested records within the possession, custody, and control of Defendant.

100.     Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

101.     Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiffs' FOIA Request.

102.     Defendant's failure to conduct searches for responsive records violates FOIA and DOJ regulations.

103.     Plaintiffs have a statutory right to the information they seek.

104.     Defendant is in violation of FOIA.

105.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

106.     Plaintiffs have no adequate remedy at law.

107.     Plaintiffs have constructively exhausted their administrative remedies.

**SECOND CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

108.    Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

109.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

110.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

111.    Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

112.    Defendant is wrongfully withholding non-exempt records requested by Heritage by failing to produce any records responsive to Plaintiffs' FOIA Request.

113.    Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiffs by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiffs' FOIA Request.

114.    Defendant's failure to provide all non-exempt responsive records violates FOIA and DOJ regulations.

115.    Plaintiffs have a statutory right to the information they seek.

116.    Defendant is in violation of FOIA.

117.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.   Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational

institution and publisher of news.   Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

118.    Plaintiffs have no adequate remedy at law.

119.    Plaintiffs have constructively exhausted their administrative remedies.

**THIRD CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Fee Waiver**

120.    Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

121.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration." *Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

122.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

123.    Defendant has constructively denied Plaintiffs' application for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) & (iii) and 28 C.F.R. § 16.10(k).

124.    The Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

125.    Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

126.    Disclosure of the information sought by the Request also "is in the public interest

because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii).

127.    Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

128.    Plaintiffs have a statutory right to a fee waiver.

129.    Defendant is in violation of FOIA by denying a fee waiver.

130.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied a fee waiver to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

131.    Plaintiffs have no adequate remedy at law.

132.    Plaintiffs have constructively exhausted their administrative remedies.

### FOURTH CLAIM FOR RELIEF
### Violation of FOIA, 5 U.S.C. § 552
### Statutory Bar Against Charging
### Fees

133.    Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

134.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General,

*Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

135.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

136.    The Request does not have a commercial purpose because Heritage is a 501(c)(3)

nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

137.     Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

138.     Disclosure of the information sought by the Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

139.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

140.     Defendant is currently statutorily barred from charging fees related to Plaintiffs' FOIA Request.  Therefore, Plaintiffs have a statutory right to have their request processed without being charged any fees.

141.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

142.     Plaintiffs have no adequate remedy at law.  Plaintiffs have constructively exhausted their administrative remedies.

### FIFTH CLAIM FOR RELIEF
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Expedited Processing**

143.     Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

144.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  *Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

145.    Plaintiffs requested expedited processing in the Request pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e)(1)(iv).

146.    The Department has failed to process the Request in an expedited manner.  While the Department purported to grant expedited processing by its September 22, 2023 letter as to Plaintiffs' administrative appeal, the Department did not indicate when it would provide agency records and Plaintiffs have received no records responsive to the Request.

147.    Defendant has failed to process the Request "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).

148.    Defendant's failure to expeditiously provide all non-exempt responsive records violates FOIA and DOJ regulations.

149.    Plaintiffs have a statutory right to the information they seek.

150.    Defendant is in violation of FOIA.

151.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

152.    Plaintiffs have no adequate remedy at law.

153.    Plaintiffs have constructively exhausted their administrative remedies.

**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A.    Enter a preliminary and permanent injunction compelling Defendant to process Plaintiffs' FOIA Request on an expedited basis;

B.    Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to Plaintiffs' FOIA Request;

C.    Order Defendants to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' FOIA Request and indexes justifying the withholding of any responsive records withheld in whole or in part under claim of exemption;

D.    Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiffs' FOIA Requests;

E.    Retain jurisdiction over this matter as appropriate;

F.    Award Plaintiffs their costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 522(a)(4)(E); and

G.    Grant such other and further relief as this Court may deem just and proper.


Dated:  January 15, 2024                    Respectfully Submitted,


                                            **LAW OFFICES OF**
                                            **MURRAY, PHILLIPS & GAY**

                                            /s/ Julianne E. Murray
                                            Bar ID 5649
                                            215 E. Market Street
                                            Georgetown, DE
                                            19947
                                            Tel:  (302) 855-9300
                                            julie@murrayphillipslaw.com

SAMUEL EVERETT DEWEY
*Application for Admission Pro Hac Vice*
*Pending*
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

*Counsel for Plaintiffs*