IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HERITAGE FOUNDATION, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 24-53 (MN) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

Stephen B. Brauerman, Ronald P. Golden, III, BAYARD, P.A., Wilmington, DE – Attorneys for Plaintiffs

Bryan Christopher Williamson, Assistant United States Attorney, U.S. Attorney's Office for the District of Delaware; Wilmington, DE; Samuel Bean, U.S. Department of Justice, Civil Division, Washington, DC – Attorneys for Defendant

September 30, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are the parties' cross-motions for summary judgment on Plaintiffs' action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). (D.I. 27, 34). For the following reasons, the Court will GRANT Defendant's motion and DENY Plaintiffs' motion.

### I. BACKGROUND

#### A. The Parties

This case concerns a FOIA request by The Heritage Foundation and Mike Howell (together, "Plaintiffs") for records related to the Department of Justice's ("the DOJ" or "the Department") investigation and prosecution of Robert Hunter Biden ("Mr. Biden"), the son of former President Joseph R. Biden, Jr. (D.I. 1 ¶ 1). According to the Complaint, The Heritage Foundation is a public policy organization based in Washington, D.C., and Mr. Howell "leads The Heritage Foundation's Oversight Project and is an author for The Daily Signal." (*Id.* ¶¶ 4-5). The DOJ is a federal agency of the United States. (*Id.* ¶ 6).

On August 15, 2023, Plaintiffs asked the DOJ by FOIA request for all records "relied upon" by then U.S. Attorney for the District of Delaware David C. Weiss pertaining to certain statements Mr. Weiss made in letters to Congress in 2023. (*Id.* ¶ 2). In response, the DOJ asserts that it searched through thousands of documents, produced approximately 35 pages from 22 records, and withheld an additional 245 pages subjected to certain FOIA exemptions. (D.I. 29 ¶¶ 7-19). To challenge those withholdings, Plaintiffs initiated this action by complaint on January 15, 2024, asserting five counts for violations of FOIA against the DOJ. (D.I. 1). On February 22, 2024, the DOJ filed its answer to the Complaint. (D.I. 8).

The parties then filed a series of status reports in the matter between June and September 2024. (D.I. 11, 14, 17, 20, 22, 24). On October 15, 2024, the parties submitted a consent motion

stipulating to a briefing schedule for summary judgment, which the Court so-ordered the following day. (D.I. 26). On October 25, 2024, consistent with the stipulated briefing schedule, the DOJ filed its motion for summary judgment along with its companion opening brief and supporting Cain Declaration. (D.I. 27, 28, 29 ("Cain Decl.")). On January 1, 2025, Plaintiffs filed their answering brief and cross-motion.[1] (D.I. 34). On January 15, the DOJ submitted its responsive brief. (D.I. 35). Prior to submission of that brief, the DOJ rescinded its reliance on one FOIA exemption (Exemption 7A) in light of the pardon of Mr. Biden. (D.I. 33). On April 4, 2025 (during the current administration), the DOJ confirmed that its positions had not changed from those taken by the prior administration. (D.I. 38).

### B. <u>Undisputed Facts</u>

Pursuant to the materials before the Court, the following facts are undisputed. On May 25, 2023, the DOJ received a letter from Congressman Jim Jordan asking for, among other things, information and documents between the DOJ and the Delaware U.S. Attorney's Office about the investigation of Mr. Biden. (D.I. 28 at 3-5 ("DOJ SOF")). On June 7, 2023, Mr. Weiss responded by letter, writing that "as the Attorney General has stated, I have been granted ultimate authority over this matter, including responsibility for deciding where, when, and whether to file charges and for making decisions necessary to preserve the integrity of the prosecution, consistent with federal law, the Principles of Federal Prosecution, and Departmental regulations." (*Id.* ¶ 1).

On June 22, 2023, Congressman Jordan sent a follow-up letter to Mr. Weiss. (*Id.* ¶ 2). On June 30, 2023, Mr. Weiss wrote in response, among other things, that:

> [a]s the U.S. Attorney for the District of Delaware, my charging authority is geographically limited to my home district. If the venue for a case lies elsewhere, common departmental practice is to

---

[1] Plaintiffs' Delaware counsel, Julianne Murray, withdrew from her representation on July 8, 2025. (D.I. 39). The following week, on July 14, 2025, she was appointed interim U.S. Attorney for the District of Delaware and is now part of the DOJ, the Defendant.

> contact the United States Attorney's Office for the district in questions and determine whether it wants to partner on the case. . . . Here, I have been assured that, if necessary after the above process, I would be granted § 515 Authority in the District of Columbia, Central District of California, or any other district where charges could be brought in this matter.

(*Id.* ¶ 2).

On June 28, 2023, Mr. Weiss received another follow-up letter on the same matter, this time from Senator Lindsey Graham. (*Id.* ¶ 3). On July 10, 2023, Mr. Weiss responded to "clarify an apparent misperception and to avoid future confusion" regarding his authority to bring charges outside of the District of Delaware. (*Id.*). Specifically, Mr. Weiss wrote that:

> [I]n this case, I have not requested Special Counsel designation pursuant to 28 CFR § 600 et seq. Rather, I had discussions with Departmental officials regarding potential appointments under 28 U.S.C. §515, which would have allowed me to file charges in a district outside my own without the partnership of the local U.S. Attorney. I was assured that I would be granted this authority if it proved necessary. And this assurance came months or before the October 7, 2022, meeting referenced throughout the whistleblowers' allegations." [and that] In this case, I've followed the process outlined in my June 30 letter and have never been denied the authority to bring charges in any jurisdiction.

(*Id.*).

On August 15, 2023, the Executive Office for United States Attorneys ("EOUSA") received Plaintiffs' FOIA request for all records "relied upon by David Weiss in" the statements to Congressman Jordan and Senator Graham. (*Id.*). To find responsive records, the DOJ searched emails contemporary to the June 7, June 30, and July 10 letters from which the statements came. (*Id.*). The Department also searched Mr. Weiss's notes and those of an Assistant United States Attorney ("AUSA") involved in the drafting process. (*Id.*). The DOJ provided the parameters of that search to Plaintiffs, who did not challenge them. (*Id.*; D.I. 29 ¶ 21).

3

The DOJ asserts that it processed more than 4,000 pages of potentially responsive records and made four productions. (DOJ SOF ¶ 3; D.I. 29 ¶ 12). On April 15, 2024, the DOJ tendered its first interim response. (DOJ SOF ¶ 3; D.I. 29 ¶ 7). In it, the DOJ released six pages of records in full, 18 pages in part, and withheld 227 pages in full. (DOJ SOF ¶ 3; D.I. 29 ¶ 8). On May 31, 2024, the DOJ tendered its second response, releasing seven pages of records in full and withholding one page in part. (DOJ SOF ¶ 3; D.I. 29 ¶¶ 6, 9). On September 4, 2024, the DOJ tendered its third response, withholding 18 pages of records in full. (DOJ SOF ¶ 3; D.I. 29 ¶¶ 6, 10). The DOJ re-reviewed all its withholdings prior to filing this motion. (DOJ SOF ¶ 3; D.I. 29 ¶ 13).

Pursuant to that review, the DOJ re-released three pages with fewer withholdings, another page with one exemption withdrawn, and four pages in full that were inadvertently withheld. (DOJ SOF ¶ 3; D.I. 29 ¶¶17-18 & Ex. 4; D.I. 29-1 (Vaughn Index) No. 11 & n.2). The DOJ deemed 80 pages of records previously withheld in full to be non-responsive, and another 40 pages of previously withheld records to be duplicates of records already withheld in full. (D.I. 29 ¶¶ 15-16). After the comprehensive final review and production, the DOJ represents that it is withholding 22 pages in part and 121 records in full. (*Id*. ¶ 19).

## II.    LEGAL STANDARD

### A.    Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after

4

which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 & n.10 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

"Material" facts are those that "could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). "If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (cleaned up).

### B. The Freedom Of Information Act

"The Freedom of Information Act was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The statute was designed "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation marks omitted). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166-67 (1985). As a result, "Congress sought to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). "There are, [therefore], specific exemptions from disclosure set forth in the Act," *id.*, and "agency records may be withheld from disclosure under any of the nine exemptions." *Sims*, 471 U.S. at 167; *Manna v. DOJ*, 51 F.3d 1158, 1163 (3d Cir. 1995).

"[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Ray*, 502 U.S. at 173. "This burden may be satisfied by affidavits that describe the material withheld and why that material falls under a particular exemption." *ACLU of New Jersey*, 733 F.3d at 531. "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 74 (D.C. Cir. 2018) (internal quotation marks and citation omitted).

"An agency is entitled to summary judgment when the agency's affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Davin v. United States Dep't of Justice,* 60 F.3d 1043, 1050 (3d Cir. 1995) (cleaned up). Thus, FOIA cases are typically adjudicated by summary judgment. *See, e.g.*, *id.*; *Manna*, 51 F.3d at 1163; *McDonnell*, 4 F.3d at 1251.

### III.   DISCUSSION

The DOJ seeks summary judgment that it properly withheld documents under three of the enumerated FOIA exemptions: (1) Exemption 5, protecting "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5); (2) Exemption 6, which shields from disclosure information in "personnel and medical files and similar files" if disclosing that information "would constitute a clearly unwarranted invasion of personal privacy," *id*. § 552(b)(6); (3) Exemption 7(E), which shields from disclosure "records or information compiled for law enforcement purposes [that] would disclose techniques and procedures for law enforcement investigations or prosecutions[.]" 5 U.S.C. § 552(b)(7)(E).[2] Plaintiffs cross-move for summary judgment. The Court finds that there is no genuine issue of material fact and will grant the DOJ's motion. Before addressing the merits of the DOJ's withholdings, this Court addresses Plaintiffs' argument that the Cain declaration is not competent to lay factual foundation for the DOJ's withholdings.

#### A.   **Competency of the DOJ's Declarant**

Plaintiffs claim that the declaration of Kara Cain (an attorney-advisor with the Freedom of Information Act/Privacy Act staff of the EOUSA, United States Department of Justice) is not competent to lay the factual foundation for the DOJ's withholdings. (D.I. 34 at 4–5; Cain Decl. ¶ 1). According to Plaintiffs, because the prosecutions "and now the records themselves" are vested within the Special Counsel, only someone from Special Counsel's Office ("SCO") would

---

[2] The DOJ originally asserted Exemption 7(A), but withdrew its reliance on that exemption after Mr. Biden was pardoned. (D.I. 33, 38).

have "the full ambit of relevant facts" needed to lay the factual foundation for the withholdings. (D.I. 34 at 5). In short, Plaintiffs argue that an EOUSA attorney is not capable of laying the factual foundation for the withholdings here because an EOUSA attorney would not have first-hand knowledge of the facts needed to lay that foundation. *Id.*

Rule 56(c)(4) of the Federal Rules of Civil Procedure outlines the standard that a FOIA affidavit must meet at summary judgment. *Hall & Assocs. v. United States Env't Prot. Agency*, 633 F. Supp. 3d 35, 57 (D.D.C. 2022). "In a FOIA case, a declarant meets the standard of personal knowledge under Rule 56(c)(4) if his declaration is based on his 'own personal knowledge,' 'information acquired by [him] through the performance of [his] official duties,' or his review of 'official files and records.'" *Id.* (quoting *Elliot v. Fed. Bureau of Prisons*, No. 04-1702, 2006 WL 5217760, at *6 (D.D.C. Oct. 17, 2006)). That means Agency declarants are not required to have first-hand knowledge of the facts they rely on; instead, they can gather those facts through performance of official duties or based on a review of files and records. *Id.*

Here, the Cain Declaration makes clear that it was made "upon [Cain's] personal knowledge, information provided to [Cain] by knowledgeable persons in [Cain's] official capacity as an Attorney-Advisor, and conclusions and determinations reached and made in accordance therewith." (Cain Decl. ¶ 4). Proving that Ms. Cain did have all the necessary facts, the Cain Declaration directly states that Cain "re-reviewed every record released in full, released in part, and withheld in full in this case." (*Id.* ¶ 13). Thus, the Cain Declaration complies with FRCP 56(c)(4).

### B. FOIA Exemption 5

Under FOIA Exemption 5, the DOJ is entitled to withhold from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]his exemption incorporates

the privileges available to Government agencies in civil litigation," including "the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Here, the DOJ claims that it properly withheld four categories of records under these exemptions: (1) draft congressional correspondence and internal communications about that correspondence; (2) handwritten notes taken by Mr. Weiss and one of his Assistant U.S. Attorneys; (3) an email from Mr. Weiss to himself; and (4) portions of an email from an EOUSA attorney that was unrelated to Plaintiffs' FOIA request.[3]  The Court finds that the undisputed evidence supports withholding on each category.

### 1. Draft Congressional Correspondence and Internal Communications

The DOJ withheld 10 records that constituted drafts of the June 7, June 30, and July 10, 2023 letters at issue here, claiming they are subject to FOIA Exemption 5 because they are protected under the deliberative process privilege. (Cain Decl. ¶ 36). This Court agrees.

As explained in the DOJ's undisputed declaration, all 10 records are draft responses to congressional requests for information about the Hunter Biden investigation. (*Id.* ¶¶ 37-39). The DOJ's declarant reviewed every draft individually "to ensure that it did, in fact, precede the ultimate response to Congress." (*Id.* ¶ 38). The DOJ's declarant also confirmed that the drafts reflected "edits and contemplated strategies as they work[ed] toward a well-reasoned, final product." (*Id.* ¶ 39). Thus, these documents are predecisional. *See Coastal States Gas Corp. v.*

---

[3] Plaintiffs do not challenge the DOJ's withholding of four categories of information: (1) names of congressional Staffers; (2) names of USAO-DE employees junior to the Criminal Chief; (3) names of other DOJ employees who are in non-supervisory, non-public-facing roles; and (4) email addresses, phone numbers, or physical addresses. (D.I. 29 ¶ 22).

9

*Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ("A document is predecisional if it was 'prepared to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975))). Additionally, the DOJ's declarant verified that each of these drafts reflected proposals by the authors on "whether and how to respond to the pertinent request(s) from Congress." (Cain Decl. ¶ 39). These documents are deliberative because they are "*potential* ways to answer congressional requests," *i.e.*, the drafts are suggestions for how to respond to Congressional requests. (*Id.*). Moreover, these drafts were "transmitted back and forth" and include edits that reflect "contemplated strategies as they work[ed] toward a well-reasoned, final product." (*Id.*). *See Coastal States Gas Corp.*, 617 F.2d at 866 (Documents "reflect[ing] the give-and-take of the consultative process" are deliberative.). Such predecisional and deliberative materials are protected from disclosure as a matter of law under the deliberative process privilege. *See Manatt v. U.S. Dep't of Homeland Sec.*, 473 F. Supp. 3d 409, 419–20 (E.D. Pa. 2020).[4]

The 8 internal communications about the letters were also properly withheld as protected by the deliberative process privilege. (Cain Decl. ¶ 46). These internal DOJ communications concern the drafting process for the June 7, June 30, and July 10 letters, and are protected under the deliberative process privilege for the same reasons as the 10 draft letters *supra*. As with the draft responses discussed above, the DOJ's declarant reviewed each internal communication

---

[4] The Department has further concluded that no portion of the draft letters could reasonably be segregated and produced. (*See* D.I. 29 ¶ 44); 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). That is to be expected: this draft is predecisional and deliberative. An agency could not release part of a draft without revealing, at least in part, what the agency was considering saying at a given moment.

individually, finding they were "predecisional–*i.e.*, that it preceded the ultimate response to which it pertained." *Id.* The DOJ's declarant also verified that these documents are deliberative because they "reflect[] one or more employees' thoughts, suggestions, or discussions, about how to respond" to Congressional requests. (*Id.* ¶ 47); *see Jud. Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 114 (D.D.C. 2018) (finding "five-page email exchange" protected under deliberative process privilege because they were "generated as part of the collaborative process between a nominee and an agency of determining how the nominee should field questions from Congress").

Because these documents are covered by the deliberative process privilege, they were properly withheld under FOIA Exemption 5.

### 2. Handwritten Notes Taken By Mr. Weiss and an AUSA

The DOJ withheld 21 records of handwritten notes taken by Mr. Weiss and an AUSA, claiming they are subject to FOIA Exemption 5 because they are protected under the work-product doctrine and the deliberative process privilege.[5] (Cain Decl. ¶¶ 51, 53, 59). This Court agrees.

Plaintiffs do not dispute that these documents "were drafted by an attorney and related directly to ongoing or imminent litigation, primarily the investigation and prosecution of Hunter Biden." (Cain Decl. ¶ 53). Moreover, these documents contain an array of work product-protected information, including, *inter alia*, information regarding potential charges to bring; attorneys' mental impressions regarding how to respond to Chairman Jordan's May 25, 2023 letter; and attorneys' assessments regarding various charges that could be brought in light of evidence collected. *See e.g.*, (D.I. 29-1 (Vaughn Index) Nos. 25–34);[6] *see also Conoco Inc. v. U.S. Dep't*

---

[5] The DOJ rescinded its reliance on FOIA Exemption 7A for these records. (D.I. 33).

[6] Plaintiffs' specifically argues that Vaughn Index Nos. 27 & 30 were improperly withheld because they reflect "procedures," which are not deliberative. (D.I. 34 at 16). Those documents, however, do not broadly relate to agency procedures but rather to the specific

*of Just.*, 687 F.2d 724, 730 (3d Cir. 1982) ("[T]he work-product doctrine 'protects from discovery materials prepared or collected by an attorney in the course of preparation for possible litigation.'" (quoting *In re Grand Jury Investigation*, 599 F.2d 1244, 1228 (3d Cir. 1979))).

In addition, these documents are protected under the deliberative process privilege. As one would expect from work product-protected documents, these documents reflect attorneys' deliberations regarding potential strategies for prosecuting Hunter Biden in addition to evaluating strengths and weaknesses of the government's case. (Cain Decl. ¶ 54). They also reflect attorneys' impressions and deliberations regarding how to respond to a congressional inquiry. (*Id.* ¶ 60). They also reflect attorneys' notes regarding "next steps" to take in a criminal investigation. (*Id.*) Thus, these are predecisional and deliberative and protected by the deliberative process privilege. *See Venkataram v. Off. of Info. Pol'y*, No. 09-6520 (JBS), 2013 WL 3871730, at *7 (D.N.J. July 25, 2013).[7]

Because these documents are protected under both the work-product doctrine and the deliberative process privilege, the DOJ properly withheld them under FOIA exemption 5.

### 3. Mr. Weiss's Email to Himself

Under FOIA Exemption 5, the DOJ partially withheld an email from Mr. Weiss to himself, entitled "Special Counsel." (Cain Decl. ¶ 74; *see* D.I. 29-1 (Vaughn Index) No. 9). This email constitutes attorney work product because it relates to Mr. Weiss's potential appointment as a

---

actions that the agency was considering in this case. (D.I. 29-1 (Vaughn Index) Nos. 27 & 30).

[7] Although the Third Circuit has not addressed whether a segregability analysis applies to work product-protected documents, other circuits have held no segregability analysis is required. *See Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 888 (D.C. Cir. 2021). Regardless, the Department has evaluated the documents and concluded that no portion of these documents could reasonably be segregated and produced. (Cain Decl. ¶ 58). That is to be expected because releasing any portion of a work product-protected document would likely reveal an attorney's mental impressions.

Special Counsel, investigative and policy rationales for such an appointment, and his impressions about the underlying investigation.[8] (Cain Decl. ¶¶ 74-75); *see Conoco Inc.*, 687 F.2d at 730.

Plaintiffs allege this withholding is improper, claiming it is not clear "that it was prepared or obtained because of the prospect of litigation" because the description of this entry notes that it includes potential "policy rationales" for Mr. Weiss's appointment to special counsel. (D.I. 34 at 15 (citations omitted)). The description of this document, however, also states that it was created for "investigative" rationales. *See* (D.I. 29-1 (Vaughn Index) No. 9). Indeed, this entry includes "non-public information about the Hunter Biden investigation and Mr. Weiss's impression of the same," which is classic work product. *Id.* Moreover, this document was created in anticipation of litigation because it was created on July 8, 2023, during the preparations for Mr. Biden's plea agreement. *Id.*

At bottom, the Vaughn Index makes clear that Vaughn Index No. 9 reflects Mr. Weiss's mental impressions regarding the Hunter Biden investigation and was properly withheld under FOIA Exemption 5 because it is attorney work product. (D.I. 29-1 (Vaughn Index) No. 9).

### 4. Email from EOUSA Attorney Unrelated to Plaintiffs' FOIA Request

The DOJ also withheld two portions of a June 30, 2023 email from an EOUSA employee: the first withholding is under the work product doctrine and the second withholding is under the deliberative process privilege. (Cain Decl. ¶¶ 71–72; *see* D.I. 29-1 (Vaughn Index) No. 11).

The uncontroverted facts show the first withholding is proper because the withheld information reflects legal advice to Mr. Weiss regarding "an active government investigation, in anticipation of future litigation." (D.I. 29-1 (Vaughn Index) No. 11). The second withholding is also proper because the uncontroverted facts show it relates to a predecisional deliberation

---

[8] The DOJ reviewed the email to ensure that none of it could reasonably be segregated and released. (D.I. 29 ¶¶ 75-76); *see Protect Democracy*, 10 F.4th at 888.

13

regarding the agency's investigative requests and how they may be fulfilled in accordance with Federal Rule of Criminal Procedure 6(e).  (Cain Decl. ¶72).

### C.       FOIA Exemption 6

Under FOIA Exemption No. 6 the DOJ is entitled to withhold from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  This exception extends to files that contain "bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015); *see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 822 F. Supp. 2d 12, 20 (D.D.C. 2011) ("Generally, personal identifying information such as a person's name, address, phone number, date of birth, criminal history, medical history, and social security number may be protected under Exemption 6.").  "The primary purpose of Exemption 6 is 'to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'"  *Citizens for Resp. & Ethics in Washington*, 822 F. Supp. 2d at 20 (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982)).  In evaluating whether Exemption 6 protects certain information from disclosure, courts "weigh the privacy interest in non-disclosure against the public interest in the release of the records[.]"  *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999).  Although there is a presumption in favor of disclosure, withholding disclosure can be appropriate when it would protect a "substantial privacy interest," such as "an individual's name and address."  *Niskanen Ctr. v. FERC*, 20 F.4th 787, 791 (D.C. Cir. 2021).

#### 1.        Names of U.S. Attorney's Office Employees

The DOJ withheld the names of two U.S. Attorney's Office employees from 13 records.  (Cain Decl. ¶ 65).  There is no doubt that individuals have a substantial privacy interest in their name, and Plaintiffs have not suggested otherwise.  *Niskanen Ctr.*, 20 F.4th at 791.  Moreover,

14

privacy interests are heightened here, particularly given the high-profile nature of this investigation. Not only would disclosing these names reveal career civil servants assigned to the Hunter Biden investigation, revealing these names would be a "palpable threat to privacy." *Prison Legal News*, 787 F.3d at 1147. Indeed, "[d]epartment employees who have been associated with the Hunter Biden investigation have been subjected to harassment and threats, including threats to their (and their families') physical safety." (Cain Decl. ¶ 66); *see Island Film, S.A. v. Dep't of the Treasury*, 869 F. Supp. 2d 123, 136 (D.D.C. 2012) ("[I]ndividuals have a privacy interest in avoiding the harassment that could ensue following the disclosure of their personal information."). And in certain situations, the threats rose to the level of involving the United States Marshals Service and the FBI. (*Id.* ¶¶ 67–68). Plaintiffs are unable to identify any particular public interest that would outweigh these privacy interests; thus, the only public interest served in disclosure would be "the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Sheet Metal Workers Int'l Ass'n, Loc. Union No. 19 v. U.S. Dep't of Veterans Affs.*, 135 F.3d 891, 903, 905 (3d Cir. 1998) (holding that "privacy interest of employees in the non-disclosure of their names and addresses substantially outweighs the slight public interest"). Even then, it is not clear that revealing who participated in drafting Mr. Weiss's responses would contribute to that core purpose, particularly because the deliberations and draft responses are themselves exempt. *See supra* § III.B.1.

Thus, the DOJ properly withheld these records under FOIA Exemption 6.

### 2. Reference to U.S. Attorney's Office Employee's Family Member

The DOJ withheld a reference to U.S. Attorney's Office employee's family member under FOIA Exemption 6. (Cain Decl. ¶ 78). The family member was mentioned to explain the employee's availability and has no connection to the information sought in this FOIA request. (Cain Decl. ¶ 79). Plaintiffs offer no public interest in knowing the name of the family member.

Balanced against that lack of public interest is the family member's substantial privacy interest in not being associated with the Hunter Biden investigation, particularly in light of the threats and harassment to which actual USAO employees have been subjected. (Cain Decl. ¶¶ 67–68).

Thus, the DOJ properly withheld the reference to the U.S. Attorney's Office employee's family member under FOIA Exemption 6. *Sheet Metal Workers Int'l Ass'n, Loc. Union No. 19*, 135 F.3d 891 at 905; *see also Wadhwa v. Sec'y United States Dep't of Veterans Affs.*, 707 F. App'x 61, 64 (3d Cir. 2017) (per curiam) ("[I]n the absence of any public interest in disclosure [] invocation of Exemption 6 was proper.").

### D.      FOIA Exemption 7(E)

The DOJ withheld an internal filename used to reference the Hunter Biden investigation under Exemption 7(E). (Cain Decl. ¶ 77; D.I. 29-1 (Vaughn Index) No. 15). Under FOIA Exemption 7(E), the DOJ is entitled to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). "Internal identifying codes" falls squarely under this exception. *Rojas-Vega v. United States Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 311 (D.D.C. 2018).

Plaintiffs do not challenge Defendant's withholding of Vaughn Index No. 15 under FOIA Exemption 7(E). This makes sense because internal filenames are protected under this exception. *Rojas-Vega*, 302 F. Supp. 3d at 311. Indeed, revealing the internal filename would risk revealing internal agency techniques for investigations, which is the type of interest that Exemption 7(E) is intended to protect. *Id.* Thus, the DOJ properly withheld the filename used to reference the Hunter Biden investigation under FOIA Exemption 7(E).

## IV.  FORESEEABLE HARM

Both parties agree that the government may withhold materials under FOIA Exemptions when it "reasonably foresees that disclosure would harm an interest protected by" the FOIA exemption. 5 U.S.C. § 552(a)(8)(A)(I).[9]  Plaintiffs challenge whether the DOJ established the foreseeable harm requirement for its withholding of draft letters to Congress (*see supra* § III.B.1), emails pertaining to draft letters to Congress (*see supra id.*), and handwritten notes from Mr. Weiss and an AUSA (*see supra* III.B.2). (D.I. 34 at 8).

The DOJ has adequately established foreseeable harm. (Cain Decl. ¶¶ 41–43, 48, 56, 60). The DOJ did not hypothesize about harm that could result if these record were released, the DOJ outlined harm that ***would*** result from releasing these records.  For example, releasing draft responses to requests from Congress would undermine interests protected by the deliberative process privilege by chilling employees' candor in drafts if they knew those drafts may be publicly released. *Id.* ¶¶ 41–43.  That chilling would lead employees to stay silent or otherwise not propose certain litigation strategies or ideas for fear that publication of those proposals could lead to unwanted publicity or even harassment. *Id.*  The same is true regarding emails discussing those drafts. *Id.* ¶ 48.  Releasing handwritten notes would undermine the interests protected by the attorney work product doctrine because it would infringe on attorneys' "zone of privacy," within which attorneys can "think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Id.* ¶¶ 56–57.  Similarly, revealing notes taken at meetings discussing next

---

[9]  Plaintiffs appear to argue that there is a heightened "foreseeable harm" requirement in this case because its facts are unique. (D.I. 34 at 8 ("Regardless of whether the Government's foreseeable harm showing passes muster in a normal case [], they do not come close to passing muster under the unique, bizarre, and hopefully never repeated, features of this case.")).  Plaintiffs cite no legal support for applying a heightened standard, nor do Plaintiffs cite any case law for its proposition that "three unique facts foreclose a showing of foreseeable harm on this record." (D.I. 34 at 8).

17

steps in a criminal investigation would chill suggestions on how to prosecute that investigation, potentially leading to less effective prosecutions. *Id.* ¶ 60.

Plaintiffs insinuate that the highly publicized nature and "unique facts" of this case foreclose a showing of harm. (D.I. 34 at 8 ("Regardless of whether the Government's foreseeable harm showing passes muster in a normal case [] they do not come close to passing muster under the unique, bizarre, and hopefully never repeated, features of this case.").  The public nature of this case, however, cuts the other way; if anything, the foreseeable harm the DOJ articulated is even more concrete and foreseeable.  Indeed, the DOJ employees would be even less inclined to make certain suggestions in high-profile matters specifically because they reasonably fear those suggestions would be publicized, subjecting them to harassment as has happened here.  Moreover, applying a heightened foreseeable harm standard in such cases (as Plaintiffs seem to suggest (D.I. 34 at 8)) would incentivize employees to not work on some of the most important cases at the DOJ.  Thus, the DOJ has adequately shown foreseeable harm.[10]

## V. IN CAMERA REVIEW

In the alternative, Plaintiffs urge this court to review records *in camera*. (D.I. 34 at 16). After finding the DOJ has carried its burden to justify its withholdings, this Court finds that *in camera* review is unnecessary.

## VI. CONCLUSION

For the above reasons, the Court will GRANT the DOJ's motion for summary judgment and DENY Plaintiffs' cross-motion. (D.I. 27.).  An appropriate Order will be entered.

---

[10] Plaintiffs also claim the DOJ cannot show foreseeable harm because "Special Counsel reports are routinely published with little redaction."  That a Special Counsel's report may be published does not speak to the foreseeable harm that would result in disclosing the documents at issue here, which include, *inter alia*, drafts and handwritten notes.